RITA B. SMITH, appellant,

*v.*

SARAH SMITH, respondent.

[Submitted June 24th, 1912. Decided November 18th, 1912.]

1. The orphans court has no authority, under the statute, to attach for contempt an executor because he refuses to obey an order requiring him to turn over the assets of an estate in his hands to his co-executor, if such order be made while he is still in office. That power comes into existence only after removal from office of such executor.

2. Nor has such court power to refer to a master in chancery the matter of stating the accounts of an executor until he has filed his account and exception made thereto by some interested party, for its right to take this procedure is limited by statute to this situation.

The facts necessary for the consideration and determination of this appeal are, that John Smith died leaving a last will in which he appointed his wife, Sarah Smith, and his niece Rita B. Smith to be the executrices thereof, who probated the will July 26th, 1905, and were duly appointed to the offices to which they were therein nominated; that September 5th, 1907, a paper purporting to cite the executrices to account, signed by one of the judges of the orphans court, was served on the two executrices; that on the return day Sarah Smith appeared and represented to the court that she was willing to account but could not, because all the books and data concerning the administration were in the possession of her co-executrix, who refused her access to them, and thereupon the orphans court made an order requiring Rita B. Smith to turn over to Sarah Smith all such books and data in order that she might prepare and file an account of the administration; that December 6th, 1907, Sarah Smith filed her petition in the orphans court setting up, among other things, that her co-executrix had refused to return to her the books and papers, but informed her that they were in the possession of her counsel, who, application being made to him, refused to allow them to go out of his possession, but was willing that they be seen in his office.

The petitioner then prayed for a rule requiring Rita B. Smith to show cause why she should not be removed from her office and also attached for contempt, for not delivering the books and papers; that the orphans court allowed a rule to show cause as prayed, and referred the matter of accounting to a master, to state an account of the administration of the estate and restrained Rita B. Smith from making any account until the further order of the court; that the master reported the amount of commission due the executrices, the amount of counsel fees to be allowed to counsel for Rita B. Smith, and that the balance in hand was $641.19.

To this report both parties filed exceptions, and on the 19th day of August, 1909, the orphans court made a decree settling the amounts collected and disbursed by the executrices, and also allowed the exceptions filed by Sarah Smith, but refused those

filed by Rita B. Smith.   The decree further adjudges Rita B. Smith to be in contempt

"for failure to obey the citation of this court to account dated September fifth, nineteen hundred and seven, and the order of this court made herein on September twentieth in the same year directing her to deliver to said Sarah Smith the books, papers, vouchers, and writings connected with the said estate of said John Smith, deceased, and to co-operate with the said Sarah Smith in the filing of an account relating to said estate."

The decree further ordered that Rita B. Smith be removed from her office as executrix.

This decree was affirmed in the prerogative court from which this appeal was taken.

*Messrs. Roe & Runyon,* for the appellants.

*Mr. James S. Erwin,* for the respondents.

The opinion of the court was delivered by

BERGEN, J.

We are not able to perceive any legal ground upon which this decree can be supported.   As to that part of it which adjudges Rita B. Smith to be guilty of a contempt in disobeying the citation to account, it appears that a paper-writing signed by one of the judges of the orphans court was served upon her, but this was not the citation to account prescribed by the one hundred and twenty-third section of the Orphans Court act which can only be issued by the surrogate.   The utmost efficacy that can be given this paper would be that of an order to show cause, and a neglect to comply would not subject a party to attachment for "failure to obey the citation of this court to account," in the orphans court.   No attempt was made by the orphans court to proceed as if this paper was a rule to show cause under section 179 of the Orphans Court act.   In addition to what has been said the court ordered an accounting before a master and restrained the executrix from proceeding to account.

The second ground upon which the order for attachment is based is the failure to deliver to her co-executrix the books and vouchers "connected with said estate." As the order to deliver them was made before the executrix was removed from office, and while she was still one of the executrices of the estate, the orphans court had no power to make such order.

The authority of the orphans court to require an executor to turn over assets of the estate to a co-executor is limited by section 152 of the Orphans Court act to cases where the executor has been removed, and as the co-executor in this case had not been removed when the order was made the orphans court had no jurisdiction to make it.

Therefore, as the court had made an order without warrant in law, the executrix was not bound to obey it. It was as if no such order had been made, and the party could not be in contempt of an order non-existent in law.

The other point raised assails the power of the orphans court to order an accounting by a master, and to make decree thereon under the circumstances existing. The Orphans Court act prescribes how accounts of this character shall be stated and confirmed, and by section 122 it is declared that they shall not be allowed except on at least one month's notice by advertisements set up in five or more public places in the county where the settlement is to be made, and by due advertisement in one or more newspapers. It is not pretended that in this case any such procedure was followed.

The power of the orphans court to refer an account to a master is to be found in section 126 of the same act, but that power is limited to cases where notice has been duly given, a final account exhibited, and exceptions to the account made by persons interested, in which case the court may hear the contest or refer it to the surrogate, an auditor, or master to hear the parties and their witnesses and thereupon restate the account. The proceedings in this case show that no account was filed, and therefore the foundation of the right to refer to a master did not exist, and the action of the court was not justified by any statute.

The course to be pursued in cases where an executor refuses to account is to remove him and appoint another in his stead who

will account according to the requirements of the statute upon due notice and advertisement, and when removed to require the disqualified executor to turn over to the new appointee the assets of the estate. When the account is properly before the court, if exceptions are filed to it, they may then be disposed of by the court or a restatement ordered to be made by one of the statutory officers.

In the present case none of the statutory requirements were observed and the order of the orphans court cannot be sustained and should be set aside.

The decree of the prerogative court will be reversed and the record remitted to that court in order that the views here expressed may be carried out.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH. CONGDON, WHITE, TREACY—13.